UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASWINDER KAUR JHAWAR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No.  2:12-cv-02368-KJN<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 1, 2002, plaintiff's alleged disability onset date, through the date of the final administrative decision. (ECF No. 13.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 14.) Thereafter, plaintiff filed a reply brief. (ECF No. 15.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 9.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.     BACKGROUND

Plaintiff was born on December 20, 1960, earned a 10th grade education in India, and cannot communicate in English.[2]  (Administrative Transcript ("AT") 53, 65, 280, 291.)  On March 16, 2009, plaintiff applied for SSI alleging a disability onset date of August 1, 2002.  (AT 77, 142.)  Plaintiff complained of leg pain and depression.  (AT 66, 147.)  Plaintiff claimed that she had a fear of going outside and that her pain prevented her from standing for more than ten minutes.  (AT 147.)  On July 17, 2009, the Commissioner denied plaintiff's application for benefits, finding that plaintiff was not disabled.  (AT 77.)  Upon plaintiff's request for reconsideration, the determination was affirmed on April 1, 2010.  (AT 78.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 25, 2011, and at which plaintiff (represented by counsel) and a vocational expert ("VE") testified.  (AT 61, 71, 107).

In a decision dated June 22, 2011, the ALJ determined that plaintiff was not disabled and thus ineligible for benefits.  (AT 45-55.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 17, 2012.  (AT 1.)  Thereafter, plaintiff filed this action in federal district court on September 14, 2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.    ISSUES PRESENTED

Plaintiff raises three issues: (1) whether "the Commissioner erred in failing to articulate specific and legitimate reasons for failing to credit the opinion of Dr. Modi" (ECF No. 13-1 at 12); (2) whether "the Commissioner erred in finding that [plaintiff's] venous insufficiency in her legs did not result in any physical limitations"  (Id. at 17); and (3), whether "the Appeals Council

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

abused its discretion in failing to remand the case to the [ALJ] for further evaluation" in light of medical evidence submitted after the ALJ's decision. (Id. at 20.)

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

   A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

>   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
>   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
>   Step three: Does the claimant's impairment or combination of impairments meet or

3

engaged in substantial gainful activity since March 16, 2009, the date plaintiff applied for SSI benefits. (AT 47.) At step two, the ALJ determined that plaintiff had the severe impairment of depression. (Id.) The ALJ found plaintiff's alleged leg pain non-severe. (Id.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember and carry out simple instructions only; has a poor ability to deal with the public (poor is defined as seriously limited but not precluded).

(AT 49.)

At step four, the ALJ found that plaintiff had no past relevant work. (AT 53.) Finally, at step five, the ALJ determined, in reliance on the VE's testimony, that, considering plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that plaintiff could perform. (AT 53-54.) Specifically, the VE testified that plaintiff would be able to perform the jobs of hand packager, with 100,000 jobs in California; dish washer, with 20,000 jobs in California; and car washer, with 5,000 jobs in California. (AT 54, 73-74.) Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the

---

equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

Act, from March 16, 2009, through the date of the ALJ's decision.  (AT 54.)[4]

B.   Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.   Whether the Commissioner failed to articulate specific and legitimate reasons for discounting the opinion of Dr. Modi

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

---

[4] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed.  20 C.F.R. § 416.335.

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

5

minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

      a.      Summary of Dr. Modi's opinion and treatment records

Dr. Modi, an internist, was plaintiff's treating physician from 2002 through at least late-2010.[6]  (AT 276, 281, 372.)  On October 6, 2008, Dr. Modi completed a Medical Certification for Disability Exceptions form.  (AT 279-81.)  On this form, Dr. Modi stated that plaintiff "has [a history] of chronic major depression with psychotic features and is unable to learn English due to poor mental condition."  (AT 280.)  Dr. Modi also stated that plaintiff was "doing okay currently on Paxil," an antidepressant.  (Id.)

On August 19, 2009, Dr. Modi completed a Mental Impairment Questionnaire ("MIQ").  (AT 336-40.)  In the MIQ, Dr. Modi noted that plaintiff suffered from a "lack of education" and "economic problems."  (AT 336.)  At the time of the MIQ, Dr. Modi assessed plaintiff's Global Assessment of Functioning ("GAF") score as 31-40, with a peak GAF of 21-30 in the preceding year.  (Id.)[7]  Dr. Modi noted that plaintiff "had a fair response to psychiatric drugs with occasional relapses of her acute depression" and that

---

[6] Plaintiff asserts that "Dr. Modi's records appear to be incomplete" and that portions of the progress notes are "blacked out."  (ECF No. 13-1 at 17.)  However, Dr. Modi's notes were requested by the Commissioner and incorporated into the administrative transcript as received – there is no indication that the Commissioner on its own accord redacted portions of Dr. Modi's notes.  (AT 254.)  Moreover, plaintiff was represented by counsel at the administrative level, who certainly had an opportunity to submit any existing supplemental records to the ALJ if they were material to the case.

[7] GAF is a scale reflecting "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).  A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."  Id.  A GAF score of 21-30 indicates that "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  Id.

1  plaintiff's leg pain "has been poorly controlled." (Id.) Plaintiff obtained a Mini Mental
2  Status Examination ("MMSE") score of 20. (Id.) Dr. Modi opined that plaintiff suffered
3  from a wide range of difficulties stemming from her psychological condition, including
4  "generalized persistent anxiety," "persistent disturbances of mood or affect," and
5  "pressures of speech." (AT 337.) Additionally, Dr. Modi stated that plaintiff's
6  psychological condition exacerbated her experience of pain. (AT 338.) With respect to
7  plaintiff's functional limitations, Dr. Modi indicated that plaintiff was not significantly
8  limited in activities of daily living; had moderate limitations in maintaining social
9  functioning and concentration, persistence, or pace; and had one to two episodes of
10 decompensation within a 12 month period. (AT 339.) Conversely, Dr. Modi noted that
11 plaintiff's "performance of [these mental functions] is totally precluded on a sustained
12 bases and would result in failure after even short durations … from 5 to 15 minutes" and
13 that plaintiff had a "complete inability to function independently outside the area" of her
14 home. (AT 338-39.) Dr. Modi opined that plaintiff would be absent from work more than
15 four days per month due to her impairments and treatment. (AT 339-40.) Finally, Dr.
16 Modi stated that plaintiff had "chronic … leg pains which have not been responding to
17 treatment well so far." (AT 340.)
18     On October 13, 2009, plaintiff visited Dr. Modi for an exam in preparation for
19 cataract surgery. (AT 324.) At the exam, plaintiff indicated that her rheumatoid arthritis
20 was worse since her last visit, but Dr. Modi noted that "the pain [was] alleviated with
21 narcotic pain meds." (Id.) Additionally, Dr. Modi noted that plaintiff's gait was slowed,
22 she had a decreased range of motion in her knees, and had pain with range of motion in
23 her ankles. (AT 325.) However, Dr. Modi also noted that plaintiff's muscle strength was
24 "5/5 in all major muscle groups" and plaintiff had "normal overall tone." (Id.) Dr. Modi
25 indicated that plaintiff's rheumatoid arthritis was "stable on current meds." (AT 326.) In
26 reviewing plaintiff's psychiatric symptoms, Dr. Modi noted that plaintiff was "positive for
27 depression." (AT 324.) Yet, elsewhere in the same report, Dr. Modi indicated that
28 plaintiff had "appropriate affect and demeanor [and a] normal speech pattern." (AT 326.)

1    On December 28, 2009, plaintiff presented to Dr. Modi complaining of leg pain,
2  cough, sneezing, insomnia, numbness, tingling sensation in the left hand, and prolonged
3  vaginal bleeding. (AT 330.) Dr. Modi noted that plaintiff's chest was clear, prescribed
4  Flonase, and discontinued plaintiff's Premphase prescription. (Id.) Dr. Modi's other
5  notations for this visit are largely illegible.
6    On January 29, 2010, plaintiff presented to Dr. Modi with complaints of leg pain
7  (stating that her symptoms are worse since her last visit), generalized abdominal pain, and
8  a history of acquired hypothyroidism. (AT 381.) Dr. Modi's notes from this visit again
9  indicate that plaintiff's leg pain was "alleviated with narcotic pain meds." (Id.) Dr. Modi
10  also noted that plaintiff had a history of major depression, psychosis, and schizophrenia,
11  had an "anxious" affect and demeanor, and displayed psychomotor agitation. (AT 381-
12  83.) Yet, upon reviewing plaintiff's symptoms, Dr. Modi noted that plaintiff was
13  "[n]egative for anxiety, depression, and sleep disturbances," and plaintiff had a "normal
14  speech pattern." (Id.) At this examination, plaintiff's gait was slowed and had a
15  decreased range of motion in her knees, experiencing pain. (AT 383.) Again, plaintiff's
16  muscle strength was "5/5 in all major muscle groups" and she had "normal overall"
17  muscle tone. (Id.) For plaintiff's leg pain, Dr. Modi recommended over-the-counter
18  Tylenol Arthritis, "initiation of an exercise program, smoking cessation, weight loss,
19  improvement in sleep hygiene, and treatment of depression," and Dr. Modi refilled
20  plaintiff's prescription of Nortriptyline, a tricyclic antidepressant. (Id.) Dr. Modi also
21  continued plaintiff on her other medications. (AT 383-84.)
22    On June 11, 2010, plaintiff presented to Dr. Modi with "hearing loss, heavy
23  periods and postmenopausal vaginal bleeding, and allergies and sore throat." (AT 376.)
24  Additionally, Dr. Modi indicated that "medical problems to be addressed today include
25  hypothyroidism." (Id.) Like previous visits, Dr. Modi noted that while plaintiff had a
26  slowed gait and some decreased and painful range of motion, her muscle strength was "5/5
27  in all major muscle groups" and she had "normal overall tone." (AT 378.) With respect
28  to psychiatric issues, Dr. Modi's record again indicates that plaintiff was "negative for

anxiety, depression, and sleep disturbances," but that she had "an anxious demeanor … display[ed] psychomotor agitation," and had a "normal speech pattern." (Id.)

On September 3, 2010, Dr. Modi examined plaintiff again. (AT 372.) Plaintiff presented "with a history of acquired hypothyroidism … [with] associated symptoms include[ing] arthralgias" and rheumatoid arthritis. (Id.) Dr. Modi noted that the rheumatoid arthritis was alleviated with narcotic pain medicine, plaintiff's speech pattern was normal, and plaintiff was "negative for anxiety, depression, and sleep disturbances," despite also stating that plaintiff had an anxious demeanor and psychomotor agitation. (AT 372, 374.) As with plaintiff's other visits to Dr. Modi, she displayed a slowed gait, a decreased and painful range of motion in her knees, yet had a muscle strength of "5/5 in all major muscle groups [with] normal overall tone." (AT 374.)

      b.      <u>The ALJ's treatment of Dr. Modi's opinion was supported by substantial evidence in the record as a whole</u>

In discussing Dr. Modi's opinion, the ALJ gave little weight to the assessed GAF scores "because they do not accurately reflect [plaintiff's] overall level of functioning or daily activities." (AT 51.) Additionally, the ALJ stated that "even if the GAF scores given accurately reflected [plaintiff's] GAF at the time, the GAF scale does not have a direct correlation to the severity requirements of the Social Security Administration's mental disorders listings." (Id.)

As to Dr. Modi's August 19, 2009 MIQ, the ALJ stated that she gave "this opinion little weight as the severity is not supported by the medical records and it is not consistent with other substantial evidence in the record such as the lack of treatment records from a psychiatric hospitalization."[8]  (AT 51.)  The ALJ found that Dr. Modi's MIQ indicated

---

[8] Plaintiff correctly points out that psychiatric hospitalization "is not required to establish that a [plaintiff] has mental limitations or for a doctor's opinion to be credited." (ECF No. 13-1 at 16.) However, the ALJ did not assert that lack of psychiatric hospitalization was dispositive as to plaintiff's mental limitations or Dr. Modi's findings, but merely considered it as one factor in evaluating Dr. Modi's relatively severe opinion.

that plaintiff was responding well to treatment.[9] Additionally, the ALJ also opined that "[t]hese drastic difference[s] may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material has been made." (Id.) As a whole, the ALJ's treatment of Dr. Modi's opinion is supported by substantial evidence.

As the ALJ stated, Dr. Modi's MIQ "is not supported by the medical records." (AT 51.) Dr. Modi's records contradict themselves and are internally inconsistent at numerous points, as demonstrated in the summary above. Moreover, Dr. Modi's MIQ is at times inconsistent with his own treatment records. For example, while Dr. Modi's MIQ indicated that plaintiff had "a poverty of content of speech" and "pressures of speech," (AT 337), Dr. Modi's treatment records consistently note that plaintiff had "normal speech pattern[s]." (AT 326, 374, 378, 383.) Likewise, Dr. Modi's MIQ noted that plaintiff suffered from a wide range of psychological problems (AT 337); yet, as detailed above, Dr. Modi's treatment records state that plaintiff had "appropriate affect and demeanor" (AT 326) and was "negative for anxiety, depression, and sleep disturbances." (AT 372, 377, 381.) To the extent that Dr. Modi's treatment records also contain notations indicating that plaintiff is "positive for depression" (AT 324), had an anxious demeanor, or displayed psychomotor agitation (AT 374, 378, 383), these inconsistencies only underscore the ambiguity and general unreliability of Dr. Modi's medical records.

Dr. Modi's MIQ also noted that plaintiff suffered from "chronic leg pain" which was "not responding to treatment well so far." (AT 340.) As the ALJ noted, Dr. Modi's medical records do not support this finding. (AT 51.) On no fewer than three occasions

---

[9] Plaintiff argues that the ALJ misstated this portion of Dr. Modi's opinion. (ECF No. 13-1 at 15.) Dr. Modi indicated that plaintiff generally had a fair response to psychiatric drugs, but that the pain in her legs were poorly controlled. (AT 336.) Even though it appears that the ALJ, in noting a favorable response to treatment, was primarily referring to treatment of plaintiff's mental condition, the court agrees that the ALJ somewhat overstated Dr. Modi's observation. Nevertheless, as discussed in this order, substantial evidence, separate and apart from Dr. Modi's statements regarding plaintiff's response to treatment, supports the ALJ's decision to discount Dr. Modi's opinion.

did Dr. Modi note that pain medication alleviated plaintiff's leg pain.  (AT 324, 372, 381.)  Additionally, after plaintiff complained of increased leg pain, Dr. Modi told plaintiff to take Tylenol Arthritis as needed and recommended that plaintiff begin an exercise program, stop smoking, lose weight, improve her "sleep hygiene," and treat her depression.  (AT 384.)  Therefore, the ALJ permissibly found that Dr. Modi's MIQ was not supported by Dr. Modi's medical records.  (AT 51.)

Furthermore, the ALJ permissibly gave little weight to Dr. Modi's MIQ, because the MIQ was inconsistent "with other substantial evidence in the record."  (AT 51.)  Indeed, with respect to the MIQ's indications of poorly controlled leg pain, consultative examining physician and internist Dr. Chen noted that plaintiff was "well developed and nourished in no acute distress" and that plaintiff "walk[ed] without difficulty and [sat] comfortably."  (AT 290.)  Likewise, the straight leg raising test Dr. Chen conducted was negative and plaintiff had "5/5" motor strength "in the upper and lower extremities."  (AT 291.)  Dr. Chen concluded that plaintiff suffered from "no functional limitations."  (AT 291.)  The ALJ observed that Dr. Chen's findings were "consistent with the medical record such as other strength tests showing five out of five strength."  (AT 52 (citing AT 374).)  Because Dr. Chen personally examined plaintiff and his opinion is based on independent clinical findings, it constitutes substantial evidence on which the ALJ was entitled to rely.  Additionally, state agency physician Dr. Gilpeer, who has a specialty in internal medicine, echoed Dr. Chen's findings, opining that plaintiff had no exertional limitations.  (AT 307.)

Moreover, the court notes that even if the ALJ were to accept Dr. Modi's findings with respect to leg pain, plaintiff would not necessarily be disabled.  Dr. Modi noted that plaintiff could not sit, stand, or walk for more than two hours at a time.  (AT 340.)  As the Commissioner has determined that normal work breaks occur at two-hour intervals, the sit/stand/walk limitations that Dr. Modi found would not preclude plaintiff from working.  See SSR 96-9P ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an

11

1  afternoon break at approximately 2-hour intervals.").

2  With respect to the psychological findings in Dr. Modi's MIQ, the ALJ's
3  determination that these findings were inconsistent "with other substantial evidence in the
4  record" is also well supported. (AT 51.) Plaintiff told consultative examiner Dr.
5  Chandler, a registered psychological assistant working under the supervision of
6  psychologist Dr. Roxanne Morse, that plaintiff was able to wash dishes, do laundry,
7  prepare simple meals, dress and groom herself, and go grocery shopping unattended, in
8  stark contrast to the far more restrictive limitations assessed by Dr. Modi. (AT 287, 338.)
9  Dr. Chandler stated that, "at present, [plaintiff's] psychiatric symptoms appear to be
10 mostly controlled by medication." (AT 288.) During the testing process, plaintiff
11 "engaged in many behaviors suggestive of decreased motivation and effort" and "appeared
12 to be deliberately trying to misrepresent her cognitive abilities," suspicions that were
13 confirmed by the Test of Memory Malingering ("TOMM") conducted by Dr. Chandler.
14 (AT 286-88.) The ALJ permissibly gave Dr. Chandler's findings substantial weight
15 because they were "based on psychometric tests … [and] Dr. Chandler conducted an in-
16 person examination and provided a thorough and detailed report." (AT 50.) Furthermore,
17 unlike Dr. Modi, Drs. Chandler and Morse were mental health specialists. Additionally,
18 the state agency psychiatrist, Dr. Paxton, also found, based on his review of plaintiff's
19 records, that plaintiff could "do simple level tasks and understand simple level
20 instructions," while working in two-hour increments in an eight-hour day with occasional
21 public contact. (AT 360-62.)

22 Therefore, substantial evidence in the record as a whole supports the ALJ's
23 decision to discount Dr. Modi's opinion.

    2. <u>Whether the Commissioner erred in finding that plaintiff's venous insufficiency in her legs did not result in any physical limitations</u>

In determining that plaintiff's leg pain was non-severe, the ALJ stated:
> The [plaintiff's] motor strength was tested on two different occasions and was five out of five in the extremities [citing AT 290-91, 374]. The [plaintiff] testified that she experiences fatigue due to hypothyroidism, yet there is little evidence in the record that

> [plaintiff] requires naps or complains of fatigue… [Dr. Chen], noted that [plaintiff] did not have any functional limitations on a medical basis [citing AT 290-91].  On July 15, 2009, [Dr. Gilpeer,]… concluded [plaintiff] had no exertional limitations [citing AT 306-11]. Based on the foregoing, I find these alleged physical impairments non-severe, as they do not produce significant limitations in [plaintiff's] ability to perform basic work activities.

(AT 47.)

Plaintiff argues that, "[g]iven Dr. Thakur's test results and Dr. Modi's notations of leg pain and treatment of her leg pain, the ALJ erred in finding that [plaintiff] had no physical limitations." (ECF No. 13-1 at 20.)  For the reasons discussed above, the ALJ permissibly discounted Dr. Modi's opinion.

Dr. Thakur ruled out deep vein thrombosis, diagnosed plaintiff with venous insufficiency (including an aneurism with "no obvious problems" at the time), and referred plaintiff to a different medical provider, although there is no evidence in the record that plaintiff ultimately consulted with that provider.  (AT 216-17, 228.)  Importantly, despite Dr. Thakur's diagnoses, Dr. Thakur's records do not contain any concrete functional limitations resulting from the diagnosed impairments that the ALJ failed to consider.

Finally, as noted above, the ALJ reasonably relied on the opinions of consultative examiner Dr. Chen and state agency physician Dr. Gilpeer, neither of which found that plaintiff had any physical limitations.

3. <u>Whether the Appeals Council abused its discretion in failing to remand the case in light of Dr. Chellsen's opinion</u>

After the ALJ issued her decision, plaintiff submitted a report by Dr. Chellsen, a clinical and forensic psychologist, to the Appeals Council ("AC").  (ECF Nos. 13-1 at 11, 13-2.)  The AC examined Dr. Chellsen's medical evaluation but concluded that "this new information is about a later time."  (AT 2.)  "Therefore," the AC stated, Dr. Chellsen's report "does not affect the decision about whether [plaintiff was] disabled beginning on or before June 22, 2011 [the date of the ALJ's decision]."  (Id.)  In the pending motion for summary judgment, plaintiff argues that the AC "abused its discretion in failing to remand the case to the [ALJ] for further evaluation" in

1   light of Dr. Chellsen's report.  (ECF No. 13-1 at 20.)

2         As an initial matter, it is clear that Dr. Chellsen's report is part of the record before the
3   court, because Dr. Chellsen's report was presented to, and examined by, the AC.  Brewes v.
4   Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council
5   considers new evidence in deciding whether to review a decision of the ALJ, that evidence
6   becomes part of the administrative record.").  Although the AC ultimately determined that the
7   report did not relate to the relevant period, the AC nonetheless considered the report, and it
8   should have been included in the administrative transcript for purposes of judicial review.

9         Proceeding to the merits of plaintiff's argument, it is well established that retrospective
10  opinions are less persuasive in the specialty of mental health.  "The opinion of a psychiatrist who
11  examines the claimant after the expiration of his disability insured status, however, is entitled to
12  less weight than the opinion of a psychiatrist who completed a contemporaneous exam."  Macri v.
13  Chater, 93 F.3d 540, 545 (9th Cir. 1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.
14  1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable"); Weetman v. Sullivan,
15  877 F.2d 20, 23 (9th Cir.1989) (new medical report following adverse administrative decision
16  denying benefits carries little, if any, weight) (citing Key v. Heckler, 754 F.2d 1545, 1550 (9th
17  Cir. 1985)).

18        In addition to the inherently unreliable nature of retrospective mental health opinions,
19  there is significant support for the Commissioner's assertion that Dr. Chellsen's report relates to
20  plaintiff's *present* condition and not to her condition during the relevant time period.  For
21  instance, in a section titled "Capabilities and Limitations," Dr. Chellsen states that:

> [Plaintiff] *evidences* marked social, personal and occupational limitations.  It is doubtful that she would be capable of living independently and *will likely* require supervision and assistance for the foreseeable future.  She *has* severe constrictions in her range of activities and interests.  Her social skills are essential nonfunctional [sic] *at this point*… [Plaintiff] *appears* to be incapable to [sic] tolerating or adapting to even simple part time work stressors and routines.  She *is* regarded as being incompetent to manage funds in her own behalf.

27  (ECF No. 13-2 at 3 (emphasis added).)  To be sure, portions of Dr. Chellsen's report may be
28  retrospective, such as the onset of plaintiff's mental health condition purportedly coinciding with

14

the death of her father.  However, because Dr. Chellsen did not treat plaintiff prior to his evaluation, his findings as to any onset dates are essentially based on plaintiff's subjective reports.

Furthermore, even assuming that Dr. Chellsen's report relates to the relevant time period, the court finds that Dr. Chellsen's report is not material and would not provide a basis for changing the ALJ's decision.  See Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (In ascertaining whether new evidence is material, the court must "determine whether there is a reasonable possibility" that the new evidence "would have changed the outcome of the present case.").  As in Dr. Chandler's testing (AT 287-88), Dr. Chellsen noted that plaintiff "put forth a minimal degree of effort during the testing portion of the evaluation." (ECF No. 13-2 at 2.)  Indeed, Dr. Chellsen acknowledged that plaintiff was "difficult to engage … in any of the testing that was attempted." (Id.)  Moreover, Dr. Chellsen conceded that plaintiff presented a "somewhat vague clinical picture."  (Id.)  Although Dr. Chellsen then concluded that plaintiff suffers from severe mental impairments, it is notable that Dr. Chellsen, unlike Dr. Chandler, did not conduct any testing for malingering.[10]  Thus, given Dr. Chellsen's significant reliance on plaintiff's subjective statements (as translated by plaintiff's daughter), the court finds it unlikely that Dr. Chellsen's report would have changed the ALJ's decision, even if the report were found to relate to the relevant period.

V.   CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.

////

////

---

[10] The ALJ also questioned plaintiff's credibility based on several inconsistencies between plaintiff's statements at the hearing, in function reports, and to consultative examiners relating to plaintiff's household chores, daily activities, and history of hospitalization.  (See AT 51-53, 66-68, 147, 286-87, 290, 305.)

   2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is GRANTED.

   3. Judgment is entered for the Commissioner.

   4. The Clerk of Court is directed to close this case and vacate all dates.

   IT IS SO ORDERED.

Dated:  December 18, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE